JOHN LAGE and MARIA MANTILLA,

        Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,
A Florida Limited Liability Company,

        Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiffs have filed an action seeking damages for alleged violation of statutory and regulatory duties owned by servicers to borrowers. However, their claims are without merit. The facts reveal that the regulations upon which plaintiffs base their claims do not apply to the particular circumstances of this case. Moreover, the key allegations in plaintiffs' complaint have been directly rebutted by their own testimony and undisputed evidence in the record. Finally, even if the regulations apply and plaintiffs have pleaded allegations that raise genuine issues of material fact, plaintiffs have failed to provide any evidence demonstrating that defendant violated the regulations or that they suffered actual damages as a result of these alleged violations. Accordingly, defendant, Ocwen Loan Servicing, LLC ("Ocwen" or "defendant"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, files this motion for final summary judgment against plaintiffs, John Lage and Maria Mantilla ("plaintiffs"). In support thereof, Ocwen states as follows:

**I.     INTRODUCTION**

      Plaintiffs allege in their complaint that Ocwen failed to comply with the provisions of Regulation X, an amendment to the Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs claim that Ocwen failed to respond to their loss mitigation application (the "Application") within the thirty (30) days mandated under the provisions of 12 C.F.R. § 1024.41 or at any time prior to rejecting the application more than two months after it was submitted for

being completed too close to the sale date. ECF No. 1 at 5, 6. Plaintiffs state that, "at no point in time did [Ocwen] ever acknowledge [plaintiffs'] loss mitigation application or request any additional documentation or information in support of [plaintiffs'] loss mitigation application." ECF No. 1 at 6.

Plaintiffs also allege that they submitted a Qualified Written Request/Notice of Error (the "Notice") pursuant to 12 C.F.R. § 1024.35 of Regulation X several months after their loss mitigation application was rejected. ECF No. 1 at 5-6. They claim that while Ocwen acknowledged receipt of request, it never substantially respond to it, and so is in violation of Regulation X. ECF No. 1 at 6.

Plaintiffs have brought claims for violation of these provisions of Regulation X under 12 U.S.C. § 2605(f) of RESPA (ECF No. 1 at 6-9), along with a state law claim for negligence. Compl., p. 9-10, ECF No. 1. Plaintiffs seek actual, statutory, and punitive damages, along with attorney fees, claiming Ocwen, "negligently and repeatedly breached all of its duties under RESPA and Regulation X." ECF No. 1 at 8-10.

Plaintiffs' claims fail for several reasons. First, plaintiffs' testimony and the undisputed facts of record reveal that their application was submitted prior to the effective date of Regulation X. The Consumer Financial Protection Bureau itself has noted that Regulation X does not apply retroactively and will only apply to applications submitted on or after January 10, 2014. Accordingly, plaintiffs' claims lack merit, as Ocwen was under no duty and cannot be subject to penalty for failure to comply with regulations that were not in effect at the time. Moreover, even if Regulation X did apply, plaintiffs' loss mitigation application was submitted less than thirty-seven (37) days in advance of a foreclose sale, a clear indication that the provisions and requirements of 12 C.F.R. § 1024.41 did not apply to the circumstances.

Second, plaintiffs' pleaded allegations of violations of Regulation X have been clearly rebutted by plaintiffs' own testimony and uncontroverted evidence in the record. Plaintiffs' complaint is entirely based around the allegations that Ocwen failed to evaluate their application or respond to it prior to rejecting it in flippant fashion, and failed to provide a response to their error resolution request. However, plaintiffs have openly and repeatedly stated that they and their agents were in frequent contact with Ocwen, communicating several times a week, with Ocwen repeatedly updating them concerning the status of their application and additional documents which were needed. Records produced in this matter include evidence of dozens of

communications by email, mail, phone call, and fax between the parties prior to the rejection of plaintiffs' loss mitigation application. Moreover, uncontroverted testimony and records also detail that Ocwen responded to plaintiffs' Notice and that, regardless, plaintiffs were well aware of the reasons their application was rejected and that the allegations in both the Notice of Error and their complaint were entirely false.

Third, even if Regulation X applies, and even if Ocwen had a duty to adhere to it under the circumstances, and even if plaintiffs' allegations weren't fundamentally undermined by the record, plaintiffs have failed to provide evidentiary support for their allegations. Plaintiffs have failed to provide any evidence that they suffered or are entitled to damages arising out of Ocwen's alleged conduct, the key requirement for claims under Real Estate Settlement Protection Act. Ocwen has consistently asked for records or evidence concerning plaintiffs' allegations of continuing and ongoing damages, and it has gotten nothing in response. By failing to show and prove relevant damages, plaintiffs' claims must fail. Moreover, the record charts that Ocwen was in compliance with any duties owned under Regulation X in regard to loss mitigation and error review. Accordingly, as plaintiffs have fundamentally failed to make any case against Ocwen, Ocwen is entitled to final summary judgment as a matter of law.

## II. ARGUMENT[1]

### A. Standard of Law.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). That burden shifts if the moving party shows the court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the burden has shifted, the nonmoving party must designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Genuine issues of material fact only exist if a reasonable jury considering the evidence presented could find for the

---

[1] Ocwen's Summary of Material Facts has been filed under separate cover contemporaneously with this Motion.

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248.

In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Id.* at 261 n.2. All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Natl. Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979). The court may not weigh the credibility of the parties on summary judgment. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Id.* However, the facts must only be viewed in a light most favorable to the non-moving party if there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When the opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

B.  **<u>Regulation X Did Not Apply to Plaintiffs' Loss Mitigation Application</u>**.

While there is no debate that RESPA and Regulation X are consumer protection statutes created by Congress and the Consumer Financial Protection Bureau (the "CFPB") to prohibit harmful or abusive practices by loan servicers, they are not without limits in terms of their scope and use for private rights of action. The CFPB considered comments from both consumer groups and industry commenters in drafting Regulation X, striking a balance between the competing interests and in an effort to establish clarity and coordination. *See Campbell v. Nationstar Mortg.*, No. 14-1751, 2015 WL 2084023, at *7 (6th Cir. May 6, 2015). While all parties may question the efficacy of these regulations, the intent and reach of the CFPB can be accurately discerned. Here, the record, the wording of Regulation X, and statements of the CFPB together clearly demonstrate that plaintiffs' Application was not subject to the requirements of 12 C.F.R. § 1024.41. Ocwen had no duty to review the Application along the lines mandated by Regulation X, and, as a result, plaintiffs' claims must fail as a matter of law.

    1.    **Plaintiffs' Loss Mitigation Application Was Submitted Prior to the Effective Date of Regulation X.**

Regulation X did not become effective until January 10, 2014, more than a year after it was promulgated. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures

Act (Regulation X), 78 FR 10696–01 (February 14, 2013). This long delay was due to a variety of factors, but the primary reason was to strike a balance between the competing interests of loan servicers and borrowers. *Id.* at 10842; *see also Campbell v. Nationstar Mortg.*, No. 14-1751, 2015 WL 2084023, at *7 (6th Cir. May 6, 2015). The CFPB concluded that the effective date would, "ensure that consumers receive the protections in these rules as soon as reasonably practicable" and "afford covered persons sufficient time to implement the more complex or resource-intensive new requirements." *Campbell v. Nationstar Mortg.*, No. 14-1751, 2015 WL 2084023, at *7 (6th Cir. May 6, 2015). This effective date is consistent across other new CFPB regulations, regardless of issue date. *Id.*; *see also* Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed.Reg. 60382–01, 60384 (October 1, 2013). The CFPB concluded that establishing a consistent effective date would facilitate compliance and allow for a "coordinated approach to facilitate implementation." *Id.* Based on these facts and the history of RESPA, courts around the country have concluded that Regulation X was not intended to have retroactive effect.[2]

Concerning loss mitigation applications, the CFPB has stated both in the Regulations themselves and in its published guides to servicers and borrowers that the new Rules are intended to only apply to applications that were submitted on or after January 10, 2014. This stance has been repeated frequently, including in the October 2013 revisions to the final rule[3] and

---

[2] *See, e.g., Campbell v. Nationstar Mortg.*, No. 14-1751, 2015 WL 2084023, at *7 (6th Cir. May 6, 2015); *Fowler v. U.S. Bank, Nat. Ass'n*, 2 F.Supp.3d 965, 977 (S.D. Tex. 2014) (CFPB regulations were not intended to apply retroactively); *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W.Va. 341, 349-355 (2013); *Malcolm v. Wells Fargo Bank, N.A.*, No. CIV-13-0754-HE, 2014 WL 5780712, at *3 (W.D. Okla. November 5, 2014). *See also Bryan v. Federal Nat. Mortg. Ass'n*, No. 8:14-cv-307-T-26TGW, 2014 WL 2988097, at *3 (M.D. Fla. July 2, 2014) (acknowledging that the effective date of the Dodd-Frank Amendments to RESPA is January 10, 2014) (citing *Stele v. Quantum Servicing Corp.*, No. 3:12-CV-2897-L, 2013 WL 3196544, at *6 (N.D. Tex. June 25, 2013). *See generally Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (acknowledging that the amendments to RESPA did not apply retroactively).

[3] The CFPB stated, "In the preamble to certain of the various 2013 Title XIV Final Rules, the Bureau further specified that the new regulations would apply to transactions for which applications were received on or after January 10, 2014." *See* Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed.Reg. 60382–01, 60385 (October 1, 2013).

in publications to assist borrowers in understanding the rule.[4]  In matters of regulatory interpretation, the opinions of the controlling regulatory agency govern, and it appears clear that the CFPB chose a bright line effective date for its new regulations to reach a compromise between competing interests and provide clarity in the enforcement of the new servicer rules. *See Chase Bank USA, N.S. v. McCoy*, 131 S.Ct. 871, 880-881 (2011); *Sierra Club v. Johnson*, 436 F.3d 1269, 1282-1283 (11th Cir. 2006).

Looking at the record of this case, it is now undisputed that the Application was submitted on January 8, 2014, prior to the effective date of Regulation X.  The face of the Application, Ocwen's mailed response to the Application, the Notice, and plaintiffs' admissions in written discovery and at deposition all agree that the Application was submitted prior to January 10, 2014.  *See* ECF No. 49, EXHIBIT F; COMP. EXHIBIT G, at 1; COMP. EXHIBIT M at 3, 8; *see also* ECF No. 45-1, at 64:19, 67:22-25.  The CFPB had clearly indicated for nearly a year that January 10, 2014 would be the effective date for its regulation and that the rules would not apply to applications submitted prior to that date.  The CFPB even provided a loophole for those who had previously submitted applications, allowing borrowers to file new applications on or after January 10th even if they had been previously rejected.  *See, e.g.,* January CFPB Publication, p. 8.  As is clear from the record and detailed in the Summary of Facts filed contemporaneously herewith, Ocwen immediately responded to the Application and began its evaluation of it, including extensive communication and document requests between the parties, clearly proving plaintiffs' allegations false.  However, even if the plaintiffs' allegations were entirely accurate concerning Ocwen's review and response to their Application, they still would not have a private right of action for damages under 12 U.S.C. § 2605(f) as the loss mitigation rules under 12 C.F.R. § 1024.41 of Regulation X did not apply to their Application.  *See also*

---

[4] The CFPB reiterated the point in its December 2013 and January 2014 publications, "Help for Struggling Borrowers: A guide to the mortgage servicing rules effective on January 10, 2014."  In these publications, the CFPB states, "The loss mitigation application rules only apply to loss mitigation applications submitted on or after January 10, 2014." *Id.* at 12.  The publications shall hereinafter be referred to as the December CFPB Publication and January CFPB Publication, and they are available at http://files.consumerfinance.gov/f/201312_cfpb_mortgages_help-for-struggling-borrowers.pdf and http://files.consumerfinance.gov/f/201402_cfpb_mortgages_help-for-struggling-borrowers.pdf (last accessed September 4, 2015).  Ocwen has requested that the court take judicial notice of these publications pursuant to Rule 201 of the Federal Rules of Evidence.  *See* ECF No. 48.

*Gresham v. Wells Fargo Bank, N.A.*, No. 4:13-cv-711, 2015 WL 1966721, at *4 (E.D. Tex. April 29, 2015) (refusing to find Regulation X applies when breach occurred prior to effective date and continued thereafter).

### 2. Plaintiffs' Loss Mitigation Application Was Submitted Less than Thirty-Seven Days Prior to the Foreclosure Sale.

Furthermore, it is equally clear that the CFPB established a bright-line rule for whether the new loss mitigation rules would apply, centered around when an application was submitted relative to the scheduled foreclosure sale date. Regulation X requires servicers to establish a two-tiered review for applications submitted forty-five (45) days or more before a foreclosure sale and those submitted more than thirty-seven (37) days before a foreclosure sale. *See* 12 C.F.R. § 1024.41(b)-(c). However, 12 C.F.R. § 1024.41 includes no servicing requirements for applications submitted less than 37 days prior to a foreclosure sale. In fact, the CFPB's official interpretation clearly states, "a servicer is not required to comply with the requirements in § 1024.41 with respect to a loss mitigation application submitted 37 days or less before a foreclosure sale." *See* 12 C.F.R. part 1024 Supplement I, Comment 41(g) – 4.[5] The CFPB's published guides reiterate this point.[6] Servicers must still, as a general rule, comply with policies, procedures, and requirements established by the owner/assignee of a borrower's mortgage loan, pursuant to 12 C.F.R. § 1024.38(b)(2)(v), including with respect to review of applications, but the specific requirements under 12 C.F.R. § 1024.41 are not enforceable. *Id.*; *see also Deming v. Anderson v. PNC Mortg.*, No. 15-CV-11688, 2014 WL 24734805, at *4 (E.D. Mich. Aug. 10, 2015) ("[servicer] received [the application] fewer than thirty-seven days before the scheduled foreclosure sale…and was therefore under no obligation to review Plaintiff's applications.")

Here, there is no dispute that the Application was submitted barely three weeks prior to the then-scheduled foreclosure sale. *See* ECF No. 49, EXHIBIT B, at p. 15. Again the face of the Application, the docket of the foreclosure action, the extensive records of communication

---

[5] Available at http://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-respa-interpretations.pdf (last accessed September 4, 2015). Ocwen has requested that the court take judicial notice of this publication pursuant to Rule 201 of the Federal Rules of Evidence. *See* ECF No. 48.

[6] January CFPB Publication, at p. 14, 31, 33. Ocwen has requested that the court take judicial notice of this publication pursuant to Rule 201 of the Federal Rules of Evidence. *See* ECF No. 48.

between the parties, and plaintiffs' admissions in discovery and deposition make this point clear: that the Application was submitted many days fewer than the 37-day requirement. *See* ECF No. 49, EXHIBIT B, at 15; EXHIBIT F; COMP. EXHIBIT M, at 3, 8. Contrary to plaintiffs' allegations, Ocwen immediately acknowledged receipt of plaintiffs' application and began its review, remaining in contact with the plaintiffs and their agent several times a week by phone, letter, email, and fax. However, even if the plaintiffs' allegations were entirely accurate, they would have no cause of action for failure to comply with 12 C.F.R. § 1024.41, as the regulation did not apply to their application and Ocwen's review of it. Plaintiffs have made no claims that Ocwen failed to comply with 12 C.F.R. § 1024.38(b)(2)(v). Though plaintiffs asserted in their complaint that the loss mitigation rules under 12 C.F.R. § 1024.41 would suddenly apply if the foreclosure sale date is moved after the application is submitted, they have provided no evidence to support this assertion. ECF No. 1 at 5. This suggestion of how the CFPB's regulations should apply finds no support in the Regulations themselves or any commentary from the CFPB, much less any case law on such a point. The suggestion would only serve to further complicate the enforcement of Regulation X by adding ambiguity into how applications would be reviewed. If the CFPB had wished to allow what plaintiffs suggest, they would have detailed how the process would work; instead, the CFPB is crystal clear that 12 C.F.R. § 1024.41 does not apply to applications submitted 37 days or less before a foreclosure sale, without any described exceptions or alternatives. Accordingly, there is no genuine issue of material fact with respect to plaintiffs' claims with respect to loss mitigation, and summary judgment should be granted for Ocwen.

**C.** **Plaintiffs' Allegations Are Directly Contradicted By the Record.**

It is plaintiffs' pleadings which articulate the nature of their claims and scope of their case. In general, a plaintiff is ultimately bound by the allegations and averments contained within his complaint and must amend same if he wishes the court to consider different allegations and claims from those contained within. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-529 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396

(5th Cir. 1983) ("Normally, factual assertions in pleadings ... are considered to be judicial admissions conclusively binding on the party who made them."); *Palm Beach Intern., Inc. v. Salkin*, No. 10-60995-CIV, 2010 WL 5418995, at *6 (S.D. Fla. Dec. 23, 2010) (quoting *White*). Offering different or conflicting allegations in response to a motion for summary judgment will not raise a genuine issue of material fact. *Id.*; *see also Van T. Junkins and Associates v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir. 1984); *McCormick v. Ft. Lauderdale,* 333 F.3d 1234,1240 n. 7 (11th Cir.2003); *Bravo v. Eden Isles Condominiums, Inc.*, No. 09-22532, 2010 WL 10805530, at *1 (S.D. Fla. Sept. 22, 2010) (pointing out that a person cannot contradict his own deposition testimony with an affidavit and then assert that there is a material issue of fact); *Indiana Ins. Co. v. Erhlich*, 880 F. Supp. 513, 519 (W.D. Mich. 1994); *Stefanik v. Friendly Ice Cream Corp.*, 183 F.R.D. 52, 54 (D. Mass 1998). Here, plaintiffs' allegations in their complaint are quite clear in setting out what conduct by Ocwen they believe constituted a violation of Regulation X. However, plaintiffs' admissions in discovery and testimony in deposition directly contradict these allegations, so as to fundamentally undermine their claims, and make it that no rational jury could rule in their favor. *See, e.g.*, *Know v. Nopen*, No. 5:10-CV-1, 2011 WL 3962467, *at 3 (M.D. Ga. August 2, 2011) ("In this case, the record so completely contradicts the allegations in Plaintiff's Complaint that no reasonable jury could believe Plaintiff's version of events. As such, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law."); S*teven H. v. Duval County School Bd.*, No. 3:99-cv-400-J-20TJC, 2001 WL 36341690, at *4-6 (M.D. Fla. May 8, 2001). Plaintiffs have made no effort or attempt to amend their pleadings to these new allegations, and they may not do so now.

> 1. **Plaintiffs' Allegations Concerning the Loss Mitigation Application Are Rebutted By Their Testimony and the Record.**

The central allegation of plaintiffs' complaint, and the basis of each of their causes of action, is that Ocwen failed to respond or acknowledge plaintiffs' loss mitigation application prior to rejecting it on or about March 9, 2014. Plaintiffs state without equivocation, "[a]t no point in time did Servicer ever acknowledge Borrowers' loss mitigation application or request any additional documentation or information in support of Borrowers' loss mitigation application." ECF No. 1 at 6. As a result, plaintiffs seek damages for Ocwen's alleged failure "to comply with "any of [its] obligations" under 12 C.F.R. § 1024.41. *Id.* at 7-8.

Since filing their complaint, plaintiffs have directly contradicted and rebutted this allegation. Plaintiffs provided sworn testimony in deposition that they and Marzano were in contact with Ocwen several times a week. *See* ECF No. 45-1, at 75:8. Plaintiffs have admitted in written discovery that they received notices, letters, and communications from Ocwen prior to the March 9th rejection letter, acknowledging receipt of their application, informing plaintiffs that their Application was incomplete, requesting additional documents, and generally keeping plaintiffs informed as to the status of the Application. *See* ECF No. 49, COMP. EXHIBIT M, at 4-5, 8-10. Plaintiffs admit that they sent additional documents in support of the Application in response to Ocwen's requests. *Id.* Plaintiffs admit that they received a letter on March 7, 2014 informing them that their application was complete and would be reviewed. *Id.* Plaintiffs also admit that they spoke with agents of Ocwen concerning their alternatives to foreclosure prior to both scheduled foreclosure sales. *Id.* Records produced by both parties also chart the extensive contact between the parties and their agents by telephone, email, fax, and letter throughout the relevant period. *See generally* ECF No. 49, COMP. EXHIBITS G, H, and I. Plaintiffs are bound by the allegations and averments in their pleadings, and as such, the court must consider whether the record supports these allegations upon summary judgment. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-529 (2d Cir. 1985); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); *Palm Beach Intern., Inc. v. Salkin*, No. 10-60995-CIV, 2010 WL 5418995, at *6 (S.D. Fla. Dec. 23, 2010) (quoting *White*). Plaintiffs may not contradict the allegations in their pleadings in defense of summary judgment. *Id.*; s*ee also Van T. Junkins and Associates v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir. 1984); *McCormick v. Ft. Lauderdale,* 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003). Accordingly, plaintiffs' admissions and the record following discovery so thoroughly rebut the allegations of plaintiffs' complaint that there is no genuine issue of material fact left for a jury to consider. Summary judgment for Ocwen is required as a matter of law.

Plaintiffs have silenced any debate by fundamentally undermining their own arguments. So extreme are the differences between what is contained in plaintiffs' pleadings and what is shown by their admissions in the record that Ocwen is left to wonder if plaintiffs are in some way trying to amend their pleadings to assert new and different allegations against Ocwen. Any new allegations or claims concerning how Ocwen evaluated the Application or in some way

failed to comply with 12 C.F.R. § 1024.41 are absolutely barred at this stage of the litigation. *See* ECF No. 15. Plaintiffs were well aware of their own communications with Ocwen concerning the Application and yet chose to make flagrantly and provably false allegations in their complaint. They cannot plead ignorance or newly acquired knowledge following discovery, as second only to Ocwen, they were the parties in the best position to know that Ocwen was reviewing the Application and keeping them informed as to its status, with the extensive communication log between the parties—a fair portion of it produced by the plaintiffs—only further demonstrating their knowledge at the time the complaint was filed. FED. R. CIV. P. 16(b)(4); *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) (a party may not amend their pleadings after the deadline set by the scheduling order without demonstrating good cause); *Moyer v. Walt Disney World Co.*, 146 F.Supp.2d 1249, 1251-1254 (M.D. Fla. 2000) (denying motion to amend and granting motion for summary judgment when party directly contradicted pleadings in deposition and failed to seek leave to amend prior to scheduling deadline). Accordingly, plaintiffs' filing of false allegations was inherently knowing and wrongful, and allowing them to amend their pleadings some five months after the deadline, despite the fact that they have not asked, would be a miscarriage of justice. Summary judgment should granted for Ocwen.

> 2. **Plaintiffs' Allegations Concerning the Qualified Written Request/Notice of Error Are Rebutted By Their Testimony and the Record.**

Plaintiffs allege in their complaint that Ocwen never substantively responded to their Notice, claiming that Ocwen, "completely ignored its obligations under 12 C.F.R. § 1024.35, and completely failed to substantively respond to [plaintiffs' Notice]." However, by affidavit and record, Ocwen has clearly demonstrated that it carefully researched the Notice and the evaluation of plaintiffs' Application in crafting its response and faxed its response to plaintiffs' counsel on October 15, 2015. *See* ECF No. 49, COMP. EXHIBIT J; EXHIBIT K, COMP. EXHIBIT L. Plaintiffs have not and cannot provide evidence to contradict these facts in the record. *See Stevens Shipping & Terminal Co. v. M/V JAPAN RAINBOW II*, 334 F.3d 439, 444 (5th Cir. 2003); *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476-477 (7th Cir. 2009) (a fax confirmation creates a presumption of receipt and a rebuttable presumption of receipt). There is no genuine issue of material fact which supports plaintiffs' allegations, and as such, Ocwen is entitled to summary judgment.

**D. There Is No Genuine Issue of Material Fact as Plaintiffs Have Failed To Substantiate Their Claims.**

If there is no genuine issue of material fact for a jury to consider, summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). Though Ocwen bears the burden of demonstrating this fact to the court, it is plaintiffs' burden to sufficiently plead their case and provide evidence in support of those pleadings. *Id.* If plaintiffs fail to provide evidence supporting their allegations of violations of Regulation X and for damages resulting from it, the court must grant final summary judgment in Ocwen's favor. *Id.* Here, plaintiffs have directly refused all requests to provide evidence of their damages or otherwise quantify them, or provide any evidence that Ocwen should be liable for statutory damages. Moreover, the uncontroverted record reflects that Ocwen complied with the requirements of Regulation X in reviewing and responding to the plaintiffs' Application and Notice. As the record fails to show a genuine issue of material fact on either of plaintiffs' claims, summary judgment must be granted.

    **1. Plaintiffs Have Failed To Provide Evidence of Damages.**

A key basis of any claim of violation of RESPA or Regulation X is proof that the borrower suffered damages as a direct result of the alleged violation.[7] *See McLean v. GMAC Mortg. Corp.*, 595 F.Supp.2d 1360, 1364-1374 (S.D. Fla. 2009); *Szczodrowski v. Specialized Loan Servicing*, LLC, No. 15-10668, 2015 WL 1966887, at *6 (E.D. Mich. May 1, 2015); *Claxton v. Orlans Associates, P.C.*, 1011813, 2010 WL 3385530, at *5 (E.D. Mich. Aug. 26, 2010). Failure to do so will result in the rejection and dismissal of the borrower's claim regardless of whether a violation actually occurred. In this action, plaintiffs have claimed entitlement to actual, statutory, and punitive damages, citing attorney's fees and litigation costs, costs associated with invoking error resolution procedures, and emotional distress. Based on these allegations, Ocwen repeatedly asked plaintiffs in discovery and at deposition for any records demonstrating and quantifying their alleged damages in this action. *See* ECF No. 45-1, at 118-129; ECF No. 49, COMP. EXHIBIT M, at 19, 23-26. Following months of delay, Ocwen has received only objections and denials in response. *Id.*; ECF Nos. 42, 43. Plaintiffs have stated that they, "do not currently have within their care, custody or control, documents

---

[7] A party may only recover damages under RESPA. Setting aside a foreclosure sale or granting a loan modification are not available remedies for violations of RESPA provisions. *See* 12 C.F.R. § 1024.41; 12 U.S.C. § 2605(f); *Servantes v. Caliber Home Loans, Inc.*, 14–13324, 2014 WL 6986414, at *1 (E.D. Mich. Dec.10, 2014).

demonstrating and quantifying their alleged damages in the Lawsuit." *See* ECF No. 49, COMP. EXHIBIT M, at 23. Plaintiffs have suggested that such records would be provided prior to trial, but as of the filing of this Motion, none have been produced, and the discovery period has now closed. Accordingly, the only evidence in the record which supports plaintiffs' claims that they suffered damages as a result of Ocwen's violation of Regulation X, are the vague, non-specific, and unsubstantiated allegations in their pleadings and at deposition. While plaintiffs may seek actual damages for violations of Regulation X, including both pecuniary and non-pecuniary damages, they are required to present evidence to quantify these damages and demonstrate that they are the result of Ocwen's violations. *See McLean v. GMAC Mortg. Corp.,* 595 F.Supp.2d 1360, 1365-1366 (S.D. Fla. 2009) (affirmed *McLean v. GMAC Mortg. Corp.*, 398 Fed.Appx. 467, 471-472 (11th Cir. 2010)); *Szczodrowski v. Specialized Loan Servicing, LLC*, No. 15-10668, 2014 WL 1966887, at *6 (E.D. Mich. May 1, 2015); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp.2d 1273, 1293-1294 (N.D. Ala. 2013) ("Plaintiffs have failed to adequately establish either Defendant failed to respond adequately or in a timely manner to their QWR, or that they suffered actual damages as a result of the alleged RESPA violation.") Plaintiffs have declined to provide such evidence. Plaintiffs cannot rest on their complaint in response to summary judgment, but must instead must show evidence in support of their allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-326 (1986). As plaintiffs have failed to do so with respect to their damages, their claims must be denied and summary judgment granted for Ocwen.[8]

---

[8] The record reveals that plaintiffs would be hard pressed to document any damages regardless of their failure to provide evidence in support. Plaintiffs have claimed stress and emotional harm, but they have not in any way distinguished this harm from that caused by the foreclosure action itself. *See* ECF No. 1; ECF No. 45-1, at 118-129, 146-149. As plaintiffs do not, and cannot, dispute the merits of the foreclosure action, there is no way to determine without additional evidence what, if any, damages distinctly arose as a result of the alleged violations of Regulation X. Plaintiffs have also alleged they required medical treatment as a possible result of stress, but the only treatment specifically referenced arises from prior to the relevant period and plaintiffs have provided no documentation or records of any medical treatment during the relevant period, much less evidence that same was caused by Ocwen's actions. *Id.* Though plaintiffs vaguely referred to expenses and lost time concerning the Application and Notice, they have made no effort to quantify these expenses or show how they relate to Ocwen's alleged violations. *Id.* Moreover, plaintiffs have openly noted that they still reside in the Property despite not making any payments on their loan or for property taxes in six years. *See* ECF No. 45-1, at 18-21; ECF No. 46-1, at 14-21. No eviction proceedings have occurred, and their income has notably increased since the relevant period. *See* ECF No. 45-1, at 8-9, 25; ECF No. 46-1, at 6-9. Plaintiffs' claims of damages are made even more suspect by their admission that

Plaintiffs additionally allege entitlement to statutory damages arising from Ocwen's violations. Statutory damages may be granted when there is a demonstrated pattern or practice of non-compliance with the RESPA provisions. 12 U.S.C. § 2605(f). Plaintiffs allege that there is a pattern or practice of non-compliance by Ocwen and refer to actions against Ocwen in other jurisdictions. *See* ECF No. 1, at 9. Plaintiffs claim that inadequacies in Ocwen's policies and procedures encompass a "general failure to adequately invest in servicing infrastructure" and are motivated by profit at the expense of borrowers. *Id.* However, in spite of this grandiose language against Ocwen, plaintiffs have only alleged two violations on two occasions of the provisions of Regulation X. These minimal allegations, made without any additional proof of a pattern or practice of non-compliance, do not rise to the level necessary for an award of statutory damages. *See McLean v. GMAC Mortg. Corp.*, 595 F.Supp.2d 1360, 1365-1366 (S.D. Fla. 2009). Accordingly, any claims for statutory damages should be denied, and should not prevent summary judgment for Ocwen.

Finally, plaintiffs plead entitlement to punitive damages under their state law claim for negligence. As an initial matter, it is very questionable if plaintiffs can seek punitive damages whatsoever. Punitive damages are not allowed under Section 2605(f) of RESPA. *In re Tomasevic*, 273 B.R. 682, 686 (M.D. Fla. 2002); 12 U.S.C. § 2605(f). Moreover, negligence claims require that the defendant owed the plaintiff a duty, and the only recognized duty in this action arises out of Regulation X, an amendment to RESPA. *See generally, Wynkoop v. Wells Fargo Home Mortg., Inc.*, No. 11-60392-CV, 2011 WL 2078005, at *4 (S.D. Fla. May 26, 2011); *Perryman v. Litton Loan Servicing, LP*, No. 14-cv--02261-JST, 2014 WL 4954674, at *18 (N.D. Cal. Oct. 1, 2014). Plaintiffs have cited no support to suggest that servicers owe borrowers any independent duty under state law, so it is highly doubtful that plaintiffs can seek punitive damages in this action. *See Branch Banking and Trust Co. v. U.S. Bank Nat. Ass'n*, No.

---

they understood the reasons their prior modifications were rejected and acknowledged that their circumstances, including income and the total amount of their loan, had not changed between their last rejection and the filing of the Application. *See* ECF No. 49, COMP. EXHIBITS C and E; ECF No. 45-1, at 61-63, 105; ECF No. 46-1, at 22-25. Accordingly, plaintiffs had no reason to believe that any modification would be granted in the first place, further eliminating any reasonable claim for damages. Finally, the majority of the leg work described in the record and plaintiffs' allegations was done by Marzano, who plaintiffs were not obliged to pay unless they received a loan modification, or their current counsel, rather than plaintiffs themselves, minimizing, if not eliminating, any claims of distinguishable actual damages. *See* ECF No. 49, COMP. EXHIBIT I; ECF No. 45-1, at 62-69.

07-80508-CIV, 2008 WL 4186982, at *4 (S.D. Fla. Sept. 8, 2008); *Wynkoop v. Wells Fargo Home Mortg., Inc.*, No. 11-60392-CV, 2011 WL 2078005, at *4 (S.D. Fla. May 26, 2011); *Sanders v. U.S. Bank Nat. Ass'n*, No. 1:13–cv–3192–WSD, 1:13–cv–3315–WSD, 2013 WL 6086157, at *3 (N.D. Ga. Nov. 19, 2013). Moreover, plaintiffs' negligence claim is entirely grounded in its claim of violations of Regulation X, as there was no breach of duty without it, and, as such, cannot stand independently if this court rules that Regulation X did not apply or was otherwise not violated. Even that duty is limited, as Regulation X specifically disclaims the notion that 12 C.F.R. § 1024.41 imposes upon a loan servicer any duty to provide a loan modification. *See* 12 C.F.R. § 1024.41(a)("[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower withy any specific loss mitigation option."); *see also Szczodrowski v. Specialized Loan Servicing*, LLC, No. 15-10668, 2015 WL 1966887, at *6 (E.D. Mich. May 1, 2015).

Regardless, to substantiate a claim for punitive damages, a party must show willful and wanton misconduct, rising above the standards for negligence or even gross negligence. *See Gulf Shore Seafood & Company, Inc.*, 501 F.2d 957, 958 (5th Cir. 1974). Willful and wanton misconduct requires proof that, "(1) the actor must have knowledge, actual or constructive, of the likelihood that his conduct will cause injury to other persons or property; and (2) the conduct must indicate a reckless indifference to the rights of others, that is, conduct which may be termed equivalent to an intentional violation of those rights." *Id.* Beyond the generic allegations in their pleadings, plaintiffs have presented no evidence or made any claims which would lead a reasonable and rational jury to the conclusion that Ocwen should be liable for punitive damages. As there is no genuine issue of material fact on this point, summary judgment for Ocwen should be granted.

### 2. The Record Demonstrates That Ocwen Complied with Regulation X.

As shown in by affidavit, Ocwen affirms that its policies and procedures during the relevant period met its investor's requirements and were in compliance with Regulation X. *See* ECF No. 49, COMP. EXHIBIT L, at 23. Moreover, Ocwen's actions in regard to both plaintiffs' Application and Notice were well in line with servicer regulations. Accordingly, as plaintiffs have not and cannot raise a genuine issue of material fact which contradicts Ocwen's position and the findings in the record, summary judgment should be granted.

When a servicer receives a notice of error, the servicer must acknowledge receipt and provide a response, if necessary, within the time limits specified under the regulation. 12 C.F.R. § 1024.35(d), (e). The servicer must first determine, based upon a reasonable investigation, whether an error occurred. If, following this investigation, the servicer has determined that no error occurred, it must then provide the borrower with:

> a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(B). Similarly, under a qualified written request or request for information, a servicer must acknowledge receipt and provide a response, if necessary, "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing." 12 C.F.R. § 1024.36(d).

Plaintiffs' notice is an odd hybrid, styling itself as a "Qualified Written Request/Notice of Error." As noted, it is also clear from plaintiffs' admissions that they were well aware of the reasons why the Application was rejected, and, further, that the allegations made in their Notice were false. Regardless, it is undisputed that Ocwen acknowledged receipt of the Notice within five days and appropriately requested an extension of time during its investigation. Moreover, as shown by affidavit and fax confirmation, Ocwen tendered its response to plaintiffs' counsel appropriately within the extension period. *See* ECF No. 49, EXHIBITS J, K, and L. As noted, Ocwen conducted a reasonable investigation into plaintiffs' allegations and concerns in crafting its response. *See* ECF No. 49, COMP. EXHIBIT L. The response itself directs plaintiffs to the March 9, 2015 letter as providing the valid reason for why plaintiffs' Application was rejected, and it provides plaintiffs with contact numbers for the research department, for an Ocwen consumer advocate, and for specific information about their loan. *See* ECF No. 49, COMP. EXHIBIT J, at 9. The record reflects that plaintiffs requested no additional information or otherwise responded to the Notice to indicate that Ocwen's response was insufficient or inadequate. As outlined above, plaintiffs had been informed several times why the Application had been rejected and were well aware that the allegations made in their Notice, and repeated in their complaint, were an entirely inaccurate description of the events that took place in review of

the Application at issue. As Ocwen conducted a thorough review of its records, provided a response which addressed plaintiffs' concerns, and provided them contact information in case further information was desired, Ocwen was in compliance with the requirements under the QWR and Notice of Error provisions of Regulation X. Plaintiffs' claims against Ocwen lack any support in the record or cited law, and summary judgment in Ocwen's favor is required.

### III. CONCLUSION

Plaintiffs' claims are hamstrung by false accusations, which they themselves contradict, and by the lack of application of Regulation X to the particular circumstances at hand. Moreover, *even if* plaintiffs had made supportable claims, and *even if* Regulation X clearly applied to the circumstances, plaintiffs have failed to present any evidence to allow a jury to conclude that Ocwen violated its duties to the plaintiffs or that plaintiffs have and/or are entitled to any damages arising out of these violations.

*Wherefore*, defendant, Ocwen Loan Servicing, LLC, by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, moves this court for entry of final summary judgment in its favor and against the plaintiffs, and for any other and additional relief that this Honorable Court deems just and proper.

### IV. REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Ocwen respectfully requests that a hearing be set on the Motion. The record in this case is complex and voluminous, involving extensive pre-litigation communication between the parties, several depositions, and numerous discovery responses. Therefore, oral argument would allow the court to question the parties concerning the facts of the case and consider whether genuine issues of material fact exist. Moreover, the focus of this litigation, and of the Motion, is the effect of Regulation X, a new regulation on which little case law exists, particularly within this jurisdiction. Ocwen's arguments in the Motion are varied and address several different aspects and requirements of Regulation X. Accordingly, oral argument will allow the court to inquire into the nature of the parties' allegations and assess the scope, effect, and requirements of Regulation X relative to plaintiffs' allegations and the circumstances of the case, so as to best rule on the Motion. A thirty-minute hearing will be adequate to allow the parties and the court to adequately assess the merits of summary judgment.

Respectfully submitted this 4th day of September, 2015.

        **BAKER, DONELSON, BEARMAN,**
        **CALDWELL & BERKOWITZ, PC**
        100 S.E. Third Avenue, Suite 1620
        Fort Lauderdale, Florida 33394
        Telephone: (954) 768-1600
        Telecopier: (954) 333-3930
        Counsel for Defendant

        By: /s/ Eve A. Cann
             Eve A. Cann
             Florida Bar No.: 40808
             ecann@bakerdonelson.com

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served by CM/ECF electronic notice and/or email on September 4, 2015, on all counsel or parties of record on the Service List below.

        /s/ Eve A. Cann
        Eve A. Cann

## SERVICE LIST

| | |
|---|---|
| Jeffrey N. Golant, Esq.<br>The Law Offices of Jeffrey N. Golant, P.A.<br>1000 W. McNabb Rd., Suite 150<br>Pompano Beach, Florida 33069<br>jgolant@jeffreygolantlaw.com<br>Co-Counsel for Plaintiffs | Jessica L. Kerr, Esq.<br>Jessica L. Kerr, P.A.<br>401 E. Las Olas Blvd., Suite 130<br>Fort Lauderdale, Florida 33301-2477<br>jessicakerresquire@gmail.com<br>Co-Counsel for Plaintiffs |