IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:14-cv-81522-BB

JOHN LAGE, and
MARIA MANTILLA,

    Plaintiffs,

vs.

OCWEN LOAN SERVICING, LLC.,
A Florida Limited Liability Company,

    Defendant.
_____/

## RESPONSE IN OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING LLC'S MOTION FOR SUMMARY JUDGEMENT

    Plaintiffs John Lage and Maria Mantilla hereby serve their Opposition to Defendant Ocwen Loan Servicing LLC's motion for summary judgment (D.E 50). Much like its statement of material facts, Ocwen's motion is replete with inappropriate representations by defense counsel that find no support in law, or the record, and also take excessive rhetorical license. Ocwen also offers extensive argument concerning Plaintiffs' purported failure to "prove" their case. This myopic argument however fundamentally misunderstands the summary judgment standard, and represents an ineffective attempt at burden shifting. Contrary to Ocwen's position, as the movant, Ocwen bears the burden to demonstrate that there are no issues of material facts, and that Plaintiff therefore could not prevail as a matter of law. Ocwen makes not attempt to do that however, and instead fruitlessly tries to shift its burden to Plaintiffs. Nevertheless, Plaintiffs must prove their case is at trial, but not before. Indeed, it is difficult to imagine how a Plaintiff could even be expected to prove a case prior to trial. In any event, Ocwen's has wholly failed to carry its own summary burden. Accordingly, its motion must be denied.

1

Furthermore, there is no shortage of evidence demonstrating that Ocwen violated its obligations under 12 C.F.R. 1024.41 in connection with its handling of Plaintiffs' loss mitigation application, and that it failed to appropriately respond to Plaintiffs' Notice of Error. As a result, it violated its duties under RESPA and Regulation X. These same acts and omissions give rise to a claim for negligence per se under Florida law, which authorizes different remedies than RESPA, including the recovery of punitive damages.

## I. OCWEN REITERATES ITS FAILED ARGUMENT THAT REGULATION X DID NOT APPLY TO PLAINTIFFS' LOSS MITIGATION APPLICATION AND IN DOING SO OVERLOOKS THE FACT THAT THE RELEVANT DATE IS THE DATE WHICH THE APPLICATION BECAME COMPLETE

Just as it did in its motion to dismiss, Ocwen once again argues that Plaintiffs here impermissibly ask the Court to apply Regulation X retroactively, because their initial application was submitted on January 8th, 2014, two days before the effective date of the relevant amendments to the regulation. The Court correctly rejected that argument, and distinguished the authority that Ocwen relied upon in support of that argument that it now attempts to resurrect. (D.E. 21, p.6-7). But Ocwen's argument is only weaker now. As discussed in Paragraph 3 of Plaintiffs' response to Ocwen's statement of undisputed material facts submitted simultaneously herewith, there is evidence that Ocwen requested additional information, in writing, in support of Plaintiffs' application on January 31st, 2014, but Plaintiffs had already provided that information by January 27th, 2014, four days earlier. Thus, under 12 C.F.R. §1024.41(c)(2)(iv), the application became "facially complete" at that time. Of course, January 27th was *after* the effective date of Regulation X. In the order denying Ocwen's prior summary judgment motion, the Court cited the Consumer Financial Protection Bureau (CFPB) published guidance stating that new regulations applied to *complete* applications submitted after January 10th, 2014 and at least 37 days before the sale. (D.E. 21, p.7 n.2)(Emphasis added). The Court also expressed

uncertainty concerning Ocwen's position that it would be free to ignore an application submitted shortly before the effective date and still pending after the effective date (D.E. 21, p.5). Nevertheless, because it is entirely possible that Plaintiffs' application actually became complete after the effective date and more than 37 days before the sale, the Court has no occasion to revisit the issue in the context of Ocwen's present summary judgment motion. Of course, Plaintiffs share the Court's skepticism concerning Ocwen's contention that it was free to ignore an earlier application submitted prior to January 10th, but still pending thereafter. In any event, the record before the Court is simply not sufficient to demonstrate that is the case here.

### III. OCWEN'S ARGUMENT THAT THE APPLICATION WAS NOT SUBMITTED WITHIN 37 DAYS BEFORE THE FORECLOSURE SALE OVERLOOKS THE UNDISPUTED FACT THAT THE SALE WAS RESCHEDULED

Ocwen argues that the application was not submitted more than 37 days prior to the January 29th, 2014 sale date. However, as discussed in Paragraph 6 of Plaintiffs' response to Ocwen's statement of material facts, it is undisputed that the foreclosure sale did not occur on that date as it was re-set (at Ocwen's express request) for March 14th, 2014. There is also evidence that the application became complete on January 28th, 2014, and perhaps even earlier than that. January 28th, 2014 is more than 37 days before March 14th, 2014.

Admittedly, these facts raise an issue that the plain language of Regulation X does not address. Here, the sale was set one day after the date that the application *may* have become complete, but the sale was rescheduled to a date more than 37 days later. Notably, it is undisputed that Ocwen requested the extension, and that it was immediately aware that request was granted. Assuming it is ultimately shown that the application became complete on January 28th, 2014, a question of apparent first impression would arise. In light of the fact that the sale was continued the following day to a date more than 37 days after the application was considered complete, does Regulation X apply? Plaintiffs submit that the answer must be "yes."

As the Court noted in the dismissal order, RESPA is a consumer protection statute and must be "construed liberally in order to best serve Congress' intent." (D.E. 21, p.6) citing *McLean v. GMAC Mortgage Corp.,* 398 F. App'x 467, 471 (11th Cir.2010) (citing *Hardy v. Regions Mortg., Inc.,* 449 F.3d 1357, 1359 (11th Cir.2006) and quoting *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998)). Regulation X's loss mitigation provisions are designed to require a mortgage servicer to evaluate a loss mitigation application before a foreclosure sale occurs. The CFPB has determined that when a complete or facially complete application is submitted 37 days prior to a sale, 30 days is an appropriate amount of time for the evaluation. Here, there is compelling evidence that Ocwen knowingly possessed Plaintiffs' facially complete application at least 37 days before the sale. Indeed, if the sale had initially been scheduled on March 14th, as opposed to January 29th, this question it would be beyond dispute that Plaintiffs were entitled to all of Regulation X's protections concerning their loss mitigation application. In any event, Ocwen fails to offer any logical reason why the January 29th sale *that never occurred* should have excused Ocwen from evaluating Plaintiffs' application prior to the March 14th, sale. Allowing Ocwen to avoid complying with the clear intent behind Regulation X based on this coincidental technicality would hardly further Congress' consumer protection objectives. To the contrary, this result would only serve to benefit mortgage servicers, to the detriment of consumers.

### IV. OCWEN'S RELIANCE ON THE FACT THAT IT COMMUNCIATED WITH PLAINTIFFS AND THEIR REPRESENTATIVE AT SOME POINT DURING THE LOSS MITIGATION PROCESS IS MISPLACED BECAUSE IT DOES NOT NEGATE THE REGULATION X VIOLATION

Ocwen offers a great deal of rhetoric concerning the fact that it continued to communicate verbally with Plaintiffs and their representative make successive requests for still more information and additional or duplicative documents after Plaintiffs provided the requested

paystubs.  Ocwen even makes the utterly unfounded assertion that Plaintiffs' testimony on that point, contradicts the allegations of Plaintiffs' Complaint to the point that they were required to amend it. (D.E. 50, p.8-9).   Ocwen's overblown characterization however stands in stark contrast to the actual allegations of the Complaint.  With that said, there is one slight discrepancy.  Plaintiffs allege that Ocwen never acknowledged their application. (D.E. 1, ¶.15). The evidence has shown instead that Ocwen send a letter dated January 31st, 2014 requesting additional documents. (D.E. 47-2. p.4-6). Plaintiff Maria Mantilla's affidavit demonstrates that they promptly provided them – multiple times, thereby making their application "facially complete" as that term is defined by 12 C.F.R. §1024.41(c)(2)(iv).  This minor variance between the initial allegations and the evidence hardly required an amendment.  Nor does it change the fact that Ocwen violated its obligations under 12 C.F.R. §1024.41and damaged Plaintiffs thereby.

Furthermore, the fact that Ocwen continued to make successive requests for additional documents plainly does not justify the entry of summary judgment in its favor.  As described in Paragraph 1 of Plaintiffs' Statement of Facts To Be Proven at trial submitted herewith, Regulation X imposes strict procedures that limit the circumstances when a servicer  may make multiple successive requests for documents supporting a loss mitigation application, and it prohibits a mortgage servicer from proceeding with a foreclosure sale where those circumstances apply.  Far from exculpating Ocwen, its own argument affirmatively demonstrates that it violated 12. C.F.R. 1024.41, by intentionally proceeding with the foreclosure sale while making a multitude of successive requests for documents supporting Plaintiffs' loss mitigation application after that application became "facially complete."

# V. OCWEN HAS FAILED TO DEMONSTRATE THAT IT CONDUCTED A REASONABLE INVESTIGATE IN RESPONSE TO PLAINTIFFS' NOTICE OF ERROR

Relying entirely on self-serving hearsay, Ocwen asserts that it responded to Plaintiffs' Notice of Error, and that its response was based on a reasonable investigation. But even if the Court accepts these unsupported representations (and it may not), there is no shortage of evidence contradicting them.

12 C.F.R. § 1024.35 required Ocwen to either correct the error that Plaintiffs identified, or explain why it believes no error occurred. Here, Ocwen did neither. By its own admission, Ocwen denied Plaintiffs' loss mitigation application simply because the sale date had nearly arrived. But before that, Plaintiff submitted a facially complete loss mitigation application on or before January 28th, 2015, which was more than 37 days before the foreclosure sale. Accordingly, under Regulation X, Plaintiffs was entitled to a substantive evaluation of their application, and Ocwen was obligated to take reasonable measures to avoid the March foreclosure sale. Ocwen's admitted failure to substantively evaluate the application, or take any action to avoid the March 14th sale plainly were errors. Ocwen failed to correct those errors. Its failure to correct these demonstrable errors is itself evidence that its related investigation was not reasonable.

Furthermore, Ocwen's letter, assuming it was sent[1], plainly did not discharge its obligation to provide Plaintiff with an explanation as to why it purported to believe no error occurred. As discussed in Paragraph 4 of Plaintiffs' accompanying Statement of Additional Material Facts, Ocwen's own corporate representative admitted that its letter "didn't specifically address" the concerns raised in Plaintiffs' correspondence, and was a "template" or a "pre-prescribed way of providing a written response to a particular request or concern." (D.E. 47-1 p.

---

[1] Plaintiffs deny the October 14, 2014 letter was sent or received.

39 line 14 – p.40 line 25). That admission alone provides an ample basis for the fact finder to conclude that Ocwen violated the RESPA/Regulation X error resolution procedures in connection with Plaintiffs' Notice of Error. Ocwen cannot rely on self-servicing hearsay to attempt to negate that which its own representative was compelled to admit.

### VI.  OCWEN'S ARGUMENT THAT PLAINTIFFS HAVE "FAILED TO PROVE THEIR CASE" IS UNSUPPORTED BY THE RECORD AND FUNDAMENTALLY MISUNDERSTANDS CIVIL PROCEDURE.  PLAINTIFF IS REQUIRED TO PROVE ITS CASE AT TRIAL, NOT BEFORE

Ocwen's summary judgment motion contains a number of different references to Plaintiffs' purported "failure" to prove various aspects of their case. While this argument might be appropriate for a closing argument, it is completely out of place here. Plaintiffs are not required to prove their case prior to trial. In order to prevail on summary judgment, Ocwen must prove that they cannot. It hasn't even attempted to do so, choosing instead to rely on inapposite burden shifting rhetoric.

Notably, Ocwen never served a single interrogatory in this case. As it correctly points out, Plaintiff objected to many Rule 34 requests for documents. (D.E.50, p.12). Yet Ocwen now inexplicably now insists that Plaintiffs were required to prove their case thorough document production and their own deposition testimony. Once again, Ocwen attempts to establish facts in a manner that is not contemplated by the Federal Rules of Civil Procedure or the Federal Rules of Evidence. The fact that Plaintiff objected to production requests does not establish any fact whatsoever, much less one that would entitle Ocwen to summary judgment. If Ocwen believed that Plaintiffs' objections were improper, it was required to confer in good faith and if necessary seek to compel better responses. But it didn't do that. Regardless, its attempt to stretch its dissatisfaction with Plaintiffs' responses to its Rule 34 request into some sort of admission is completely devoid of merit.

Troublingly, Ocwen appears to assert that Plaintiffs should be required to prove their damages through hostile questioning by defense counsel. This position however is also baseless. Plaintiffs are not attorneys, and cannot be expected to understand what sort of damages are recoverable under RESPA. Furthermore, Ocwen does not even identify any specific part of their testimony that it contends was insufficient, choosing instead to rely on self-serving rhetoric. Nevertheless, Plaintiffs' deposition testimony is replete with references to their severe emotional distress. Additionally, Plaintiff Maria A. Mantilla's affidavit identifies out-of-pocket expenses that are recoverable under RESPA.

Ocwen also attempts to negate Plaintiffs' deposition testimony concerning emotional distress by launching into a diatribe in foot note 8 of its summary judgment motion (D.E. 50, p. 13-14) insisting that their emotional distress is attributable to the foreclosure, and not Ocwen's failure to process their loan modification. However, the two are logically indistinguishable. If Ocwen had processed their loan modification in the required manner, it is entirely possible that it would have been approved and they would have avoided any further emotional distress. Ocwen attempts to avoid this obvious connection by asking the Court to infer that it was always a foregone conclusion that Plaintiffs application would have been denied. But this is more unfounded rhetoric. There is nothing before the Court that would support that conclusion. To the contrary, the Court is obligated to consider the facts in the light most favorable to the party opposing summary judgment.

### V. PLAINTIFFS' COSTS ASSOCIATED WITH THE EXACERBATION OF THE FORECLOSURE, THE COSTS OF SENDING THEIR NOTICE OF ERROR, AND EMOTIONAL DISTRESS ARE RECOVERABLE UNDER RESPA

As explained in Paragraphs 6 and 7of Plaintiff Maria A. Mantilla's affidavit, Plaintiffs incurred legal expenses in an effort to avoid foreclosure while her loss mitigation application was pending. Plaintiffs also incurred nominal, but recoverable, expenses in sending their Notice of

Error after Ocwen failed to process their application as required by Regulation X. Both are liquidated out-of-pocked expenses clearly attributable to Ocwen's RESPA violations.

There are a number of district level decisions concerning whether the costs of sending a Qualified Written Request under RESPA and recoverable of damages. Plaintiffs can find no decisions finding that these costs are never recoverable, but there is a split of authority concerning whether the *initial* cost of sending the RESPA correspondence is recoverable as damages. Both *Justice v. Ocwen Loan Servicing*, 2015 WL 235738(Case No. 2:13-cv-165)(S.D. Ohio January 16th, 2015) and *Marais v. Chase Home Finance LLC.*, 24 F.Supp.3d 712, 727-728) (S.D. Ohio) contain detailed analysis as to why the costs associated with sending even the first RESPA request become damages when the servicer fails to respond. Simply put, if the servicer appropriately responds, the cost associated with the request is merely a transaction cost. But when the servicer fails to appropriately respond, the costs expended come to naught. *Marais* analogizes the issue to a situation where a customer hires a painter to paint a fence. If the customer gets what the customer pays for, the costs of the fence painting is simply a cost. But if the painter never paints the fence, but instead absconds with the money, the costs represent loss occurring as a result of a wrongful act. Thus, the costs associating with painting the fence become damages. *Id.* at 727.

Conversely, some Courts have found that the cost of sending RESPA correspondence is not recoverable where that cost is incurred *prior to* the RESPA violation. *See Zaychick v. Bank of America*, 2015 WL 4538813* (Case No. 9:15-cv-80336)(S.D. Fla. July 25th, 2015) citing *Steele v. Quantum Serv. Corp.,* 12–CV–2897, 2013 WL 3196544 (N.D. Tex. June 25, 2013); *Lal v. Amer. Home Serv., Inc.,* 680 F.Supp.2d 1218, 1223 (E.D.Cal.2010).

But this dispute is irrelevant here. In this case, Plaintiffs sent the Notice of Error well after Ocwen violated 12 C.F.R. § 1024.41, and in an attempt to mitigate the harm that violation

caused them. Thus, the expenses associated with doing so were necessarily incurred after the violation, and as a direct consequence of the violation.

Of course, Plaintiffs did not bring this case to recover the small amount of money associated with the costs of preparing and sending their Notice of Error. Instead, they brought this case to vindicate important federal rights arising from the recently amended and implemented RESPA provisions. Regardless, the nominal damages they incurred when they sent their Notice of Error, only to receive an admittedly non-responsive template response, are clearly recoverable and sufficient in and of themselves to defeat summary judgment.

Furthermore, unlike Florida law, federal law contains no "impact rule" concerning emotional distress damages. Instead, emotional distress damages are construed very broadly, and can be proven at trial by the plaintiff's own testimony. See *McLean v. GMAC Mortgage Corp.,* 398 F.App'x 467, 471 (11th Cir. 2010). As Ocwen effectively concedes in foot note 8 of its summary judgment motion (D.E. 50, p. 13-14), Plaintiffs plainly did testify that they sustained emotional distress.

In *McCollough v. Johnson, Rodenburg, and Lauinger,* 637 F.3d 939 (9th Cir. 2011), the 9th Circuit upheld a $250,000 verdict based largely upon emotional distress damages under the Fair Debt Collection Practices Act. Former Supreme Court Justice Sandra Day O'Conner sat on that panel by designation. In that decision, the 9th Circuit approved a jury instruction describing actual damages as follows:

> Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin,

> disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.
>
> The law does require, however, that when making an award for mental and emotional suffering and distress you should exercise calm and reasonable judgment. The compensation must be just and reasonable.
>
> *Id.* at 957.

Thus, under federal law, emotional distress damages are available to compensate those who have been injured in intangible ways by violations of consumer protection statutes. Here, Plaintiffs' potential injuries are significant. Unlike the FDCPA Plaintiff in *McCollough*, Plaintiffs are at risk of losing their home as a result of Ocwen's violation of federal law.

Ocwen attempts to negate Plaintiffs' testimony by asserting that it should not be considered as credible under the circumstances (D.E. 50, p. 13-14 n.8). But of course, such determinations cannot be made in the context of a summary judgment motion. Ocwen is free to make these points during its closing argument, but it cannot properly do so now.

Plaintiffs have also alleged that the RESPA violations in this case are the consequence of the fact that Ocwen maintains inadequate procedures to comply with RESPA. Ocwen challenges these allegations by improperly insisting that Plaintiffs' have failed to prove them. (D.E. 50, p. 14). But once again, Ocwen's effort at burden shifting fails. Ocwen doesn't even attempt to demonstrate that there are no material issues of fact concerning the sufficiency of its procedures. The summary judgment burden is on Ocwen, not Plaintiffs. Having chosen once again to rely on burden shifting rhetoric, Ocwen neglects to offer any legally sufficient evidence as to why it could be entitled to summary judgment concerning the issues of pattern and practice or statutory damages.

## VI. OCWEN OVERLOOKS THE DISTINCTION BETWEEN A FEDERAL RESPA CLAIM AND FLORIDA NEGLIENCE PER SE CLAIM

Ocwen offers confusing argument concerning Plaintiffs' claim for negligence under Florida law, and their related prayer for punitive damages. (D.E. 50, p.14-15). Regardless, it is well settled under Florida law that a violation of a federal statutory duty will give rise to a Florida negligence claim. A number of federal district courts have reached the same conclusion applying RESPA to other state's common law of negligence, finding that RESPA imposes a statutory duty upon mortgage servicers that can support a state law claim for negligence per-se. *See E.g. Rawlings v. Dovenmuehle Mortgage Inc.,* 64 F.Supp.2d 1156, 1167 (M.D. Ala. 1999); *Sarsfield v. Citimortgage*, 667 F.Supp.2d 461, 469 (M.D. PA. 2009)[2], *Baehl v. Bank of America N.A.,* 2013 WL 1319635 *13 (S.D. Ind. March 29th, 2013 (Docket Number 3:12–cv–00029–RLY–WGH; *Bojorquez v. Gutierrez*, 2010 WL 1223144 * 11 (N.D. CA. March 25th, 2010) (Docket Number C 09–03684 SI).

Furthermore, in *Tectonics Inc. of Florida v. Castle Construction Co.*, 753 F.2d 957 (11th Cir. 1985), the 11th Circuit explained:

> A state court is " 'free to look to the provisions of a federal statute for guidance in applying its longstanding common-law remedies' unless Congress has prohibited the state from looking to the statute's provisions as a standard in determining whether there has been a common-law breach of duty." *Hofbauer v. Northwestern National Bank of Rochester, Minnesota,* 700 F.2d 1197, 1201 (8th Cir.1983) (citing *[Iconco v. Jenson Const. Co.,* 622 F.2d 1291, 1298 (8th Cir.1980]) As we have pointed out, the Small Business Act does not itself create a federal cause of action. However, it does not *prevent* a state court from finding fraud, unjust

---

[2] The *Sarsfield* Court ultimately held that the Pennsylvania tort claims in that case were barred by a state law doctrine similar to the economic loss rule. *Sarsfield v. Citimortgage*, 707 F.Supp.2d 546, 553 (M.D. PA. 2010). However, the Florida Supreme Court has recently expressly abrogated the Florida economic loss rule in all actions, except those involving products liability. *See Tiara Condo. Ass'n v. Marsh & Mclennan*, 110 So.3d 399 (Fla. 2013). Even if the economic loss rule were not abrogated, there is no contract between Borrowers and Ocwen in this case, and therefore no basis to apply the economic loss rule even if it were still viable.

> enrichment or interference with a business relationship where there has been a violation of the statute.
>
> As this issue was not addressed by the district court, we do not address it on appeal. On remand, the district court must determine whether the Supreme Court of Alabama would use the Small Business Act as a standard in determining fraud, unjust enrichment or interference with a business relationship.
>
> *Id*. at 964. (Emphasis in the original)

As the Eleventh Circuit has also explained, a negligence per se claim is appropriate under Florida law where there is a violation of statute that establishes a duty to take precautions to protect a particular class of persons. *See Liese v. Indian River County Hosp. Dist.,* 701 F.3d 334, 353 (11th Cir. 2012) citing *deJesus v. Seaboard Coast Line R.R. Co.,* 281 So.2d 198, 200–01 (Fla.1973). As discussed above RESPA is a consumer protection statute designed to protect mortgage borrowers. The error resolution procedures are more specifically designed to protect borrowers who, like Plaintiff, believe their loan has been improperly serviced. Similarly, the loss mitigation procedures are designed to protect borrowers who have fallen behind on their mortgage payments. The Florida Supreme Court has repeatedly recognized that a tort duty can arise from administrative regulations as well as statutes. See *Clay Elec Cooperative v. Johnson, 873 So.2d 1182, 1185* (Fla. 2004) citing *McCain v. Fla. Power Corp.,* 593 So.2d 500, 503 n. 2 (Fla.1992). Florida courts have applied this rule to federal administrative regulations. *See E.g. Florida Freight Terminals Inc. v. Cabanas*, 354 So.2d 1222, 1225 (Fla. 3d DCA 1978). The United States Supreme Court has observed that "[t]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *Grable and Sons Metal Products v. Darue Engineering and Mfg.,* 545 U.S. 308, 318-319;125 S.Ct. 2363, 2370 (2005) citing Restatement (Third) of Torts § 14, Reporters' Note, Comment *a,* p. 195

(Tent.Draft No. 1, Mar. 28, 2001). See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 36, p. 221, n. 9 (5th ed. 1984).

Ocwen points to nothing in RESPA that indicates that Congress intended to preclude states from using a violation of a duty established by RESPA from supporting a state law negligence per se claim. As discussed below, the anti-preemption provisions of RESPA reflect that Congress had no such intention.

The Florida Supreme Court explained in *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238,1239 (Fla. 1996) "[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." *Id.* at 1239 citing *Ferguson Transp., Inc. v. North Am. Van Lines, Inc.,* Nos. 84,156, 84,167, 687 So.2d 821 (Fla.1996); *see also AFM Corp. v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180, 181 (Fla.1987). Under Florida law, a tort claim is independent from a contract claim if it "…requires proof of facts separate and distinct from the breach of contract." *Id.* at 1239. Here, the duties that Ocwen breached do not arise from any contract. In fact, there is no contract between Plaintiffs and Ocwen. Rather, Ocwen is simply an independent contractor retained by the mortgagee.

### V. ALTHOUGH PLAINTIFFS ARE NOT REQUIRED TO PROVE OCWEN'S GROSS NEGLIGENCE PRIOR TO TRIAL, OCWEN'S OWN SUMMARY JUDGMENT SUBMISSIONS THEMSELVES PROVIDE AN ADEQUATE BASIS FOR THE FACT FINDER TO DETERMINE THAT OCWEN WAS GROSSLY NEGLIGENT AND THAT PUNITIVE DAMAGES ARE WARRANTED IN ORDER TO DETER SIMILAR MISCONDUCT IN THE FUTURE

Relying, once again, upon its impermissible effort at burden shifting, Ocwen argues that Plaintiffs have failed to prove that Ocwen engaged in conduct warranting an award of punitive damages. Nevertheless, Ocwen correctly notes that a punitive damages may be awarded against a tort-feasor that had actual or constructive knowledge that its conduct presented a risk of injury

to others, and that conduct indicates a reckless indifference to another's rights. (D.E. 50, p.15 citing *Gulf Shore Seafood and Company Inc.,* 501 F.2d 957,958 (5th Cir.1974). Here, Plaintiffs had a right to have their loss mitigation application evaluated before their home was sold at the March 2014 sale, and thereby possibly avoid a preventable foreclosure. Ocwen was clearly aware that the failure to evaluate their loss mitigation application may result in Plaintiffs losing their home unnecessarily. Furthermore, Plaintiffs notified Ocwen that it failed to honor their right to a substantive review of their loss mitigation application by invoking the RESPA/Regulation X error resolution procedures. Once they did that, Plaintiffs then had a right to receive a substantive response from Ocwen regarding those concerns. But Ocwen responded with a non-responsive template. Thus, the evidence shows that Ocwen *repeatedly* violated Plaintiffs' rights and that it had knowledge that its omissions would injure Plaintiffs. In fact, even after it was notified of its violations, Ocwen did nothing to correct the situation even though it could have easily done so. Indeed, even now, Ocwen could *still* evaluate Plaintiffs' application and determine whether or not they qualify. If Plaintiffs did qualify, the foreclosure sale could be unwound and Plaintiffs could retain their home. This evidence showing that Ocwen repeatedly violated Plaintiffs rights under these circumstances would easily allow the fact finder to conclude that Ocwen has demonstrated a reckless disregard of Plaintiffs' rights, and even that it knowingly violated them.

The facts of this case bear an important similarity to those that were considered in *Goodin v. Bank of America*, 2015 WL 3866872 --- F.Supp.--- (M.D. Fla. June 23rd, 2015)(Case No.:13–cv–102–J–32JRK)(Corrigan, J). Like the case at bar, that case involved mortgage servicing errors that nearly caused the affected borrowers to lose their home. The ordeal lasted for years, and involved numerous frustrated efforts by the borrowers and their counsel notify the mortgage servicer of the errors and have those errors corrected. Following a bench trial, the

Middle District found that the defendant mortgage servicer was grossly negligence and punitive damages were warranted. In reaching that result, the Court explained:

> [i]t is the Bank's employees' failure to respond to the Goodins' many efforts to correct the Bank's errors that sets this case apart. Bank of America received numerous communications from the Goodins and their attorney explaining the problems with the Bank's servicing. (Joint Ex. 5 at 2; Joint Ex. 6 at 37, 39, 40; Pl.'s Ex. 23). Yet, beyond noting that the communications were received, the Bank employees did nothing to correct the servicing errors. With their home at stake, the Goodins might as well have been talking to a brick wall.
>
> In taking no action to prevent the errors from continuing, even after being repeatedly notified of them, the Bank employees' conduct was so wanting in care that it constituted a conscious disregard and indifference to the Goodins' rights. It was as if the Goodins did not exist. Because the Bank's employees disregarded the Goodins' complaints, the servicing errors continued unabated, the Bank continued to send the Goodins false information about the amount of their debt, and then the Bank filed a misbegotten foreclosure action. The Bank employees' continued gross negligence was only stopped by the filing of this federal lawsuit.
>
> *Id*. at 15

Ocwen's gross negligence in the case at bar is even worse as Bank of America's was in *Goodin*. Like the borrowers in *Goodin,* Plaintiffs tried to communicate with Ocwen over a prolonged period of time, but were met with non-responsive, and highly automated bureaucracy at ever turn. But a Goodin observes, Bank of America's gross negligence actually stopped once the Goodins filed a federal lawsuit. Here, even now that a federal lawsuit has been pending for months, Ocwen continues to flagrantly violate Plaintiffs rights.

As the *Goodin* Court observes "[t]he goal of punitive damages is to punish gross negligence and to deter such future misconduct. *Id.* at *16. Plaintiffs did not choose to do business with Ocwen. They are powerless to select a different mortgage servicer. Accordingly, Ocwen has no business interest in making sure that Plaintiffs' have a satisfactory experience. As a result,

Ocwen has chosen to rely on demonstrably insufficient and highly automated process to handle its default servicing obligations. As a consequence of that choice, in Plaintiffs case, it has repeatedly violated federal law. Punitive damages are necessary here in order to change Ocwen's cost-benefit analysis in order to ensure that it takes compliance more seriously in the future. But in any event, for purposes of summary judgment, the burden falls on Ocwen to demonstrate that it was not grossly negligent, or that punitive damages are not appropriate. But once again, Ocwen makes no effort to do that, relying instead on its inapposite "Plaintiffs failed to prove it" argument. Accordingly, there is no basis for the Court to award summary judgment to Ocwen on either point.

Ocwen also argues that RESPA does not authorize an award of punitive damages. That is true, but that is beside the point. The punitive damages claim arises under Florida law. However, RESPA's anti-preemption provisions found at 12 U.S.C. § 2616 reflects that Congress had no intention of preempting any state law that provides greater protection to borrowers. That section is entitled "State laws unaffected; inconsistent Federal and State provisions", and expressly provides that:

> [t]his chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency.

> *Id.*

There is no inconsistency between RESPA's damages provisions and Florida common law permitting the recovery of punitive damages. As the United States Supreme Court explained in *Silkwood v. Kerr-McGhee*, 104 S.Ct. 615, 621; 464 U.S. 238, 248; 78 L.Ed.2d 443 (1984)

> [i]f Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to

17

> comply with both state and federal law, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963), or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress
>
> *Id.* at 464. citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *Pacific Gas & Electric, supra,* at – ––, 103 S.Ct., at 1722.

The potential assessment of punitive damages against a mortgage servicer that violates RESPA plainly does not make it impossible for the mortgage servicer to comply with RESPA, or impose any obstacle to Congress's consumer protection objectives in enacting that statute. To the contrary, the availability of the punitive damages remedy only serves to further deter RESPA violations, thereby furthering Congress's objectives.

Second, Ocwen wholly fails to identify *any* basis for the Court to find that Congress intended to preempt any state law punitive damages remedies for claims relating to RESPA violations. In *Silkwood*, 104 S.Ct. at, 625; 464 U.S. at 255 78 , the United States Supreme Court noted that Congress was aware that punitive damages have long been a traditional component of tort law. Thus, the party asserting that Congress intended to supplant a state law authorizing the recovery of punitive damages in that case was required to carry the burden of demonstrating Congress's intended to preclude them. *Id.* Citing *IBEW v. Foust,* 442 U.S. 42, 53, 99 S.Ct. 2121, 2128, 60 L.Ed.2d 698 (1979) (Blackmun, J., concurring). Once again, Ocwen does not so much as attempt to meet this burden here.

## **CONCLUSION**

For the reasons described above, the Court should deny Ocwen's summary judgment motion in its entirety.

Respectfully Submitted,

THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.
1999 N. UNIVERSITY DRIVE. STE. 213
CORAL SPRINGS, FL 33071
Phone: (954) 942-5270
Fax: (954) 942-5272
Email: jgolant@jeffreygolantlaw.com
By: **/S/ JEFFREY N. GOLANT ESQ.**
Fla. Bar. No. 0707732
Co-counsel for Plaintiffs Maria Mantilla and John Lage

Jessica L. Kerr, Esq.
Jessica L. Kerr, P.A. 401 E Las Olas Blvd Ste 130 Fort Lauderdale, FL 33301-2477
Fla Bar. No. 92810
Email: jessicakerresquire@gmail.com
Co-counsel for Plaintiffs Maria Mantilla and John Lage

### **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed using CM/ECF and served via Notice of Electronic Filing upon all counsel of record described below on October 1st, 2015:

Eve Cann Esq.
ecann@bakerdonelson.com
Spencer D. Leach Esq.
sleach@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
100 S.E. Third Avenue, Suite 2626
Fort Lauderdale, Florida 33394
Telephone: (954) 768-1600
Telecopier: (954) 333-3930

Counsel for Defendant Ocwen Loan Servicing LLC.

**/S/ Jeffrey Golant**